FILED 11 JUN 14 12:00USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| TAMMY LEE PHILLIPS,                    )<br>                                                          )<br>                    Plaintiff,              )<br>                                                          )<br>    v.                                                 )<br>                                                          )<br>MICHAEL J. ASTRUE, Commissioner of Social  )<br>Security,                                          )<br>                                                          )<br>                    Defendant.           ) | CV 09-1513-CL<br><br>REPORT AND<br>RECOMMENDATION |

CLARKE, Magistrate Judge:

Plaintiff Tammy Phillips appeals the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be affirmed.

1 - REPORT AND RECOMMENDATION

Phillips alleged disability beginning July 15, 2003, due to morbid obesity, hearing loss, asthma, metabolic syndrome, sleep apnea, and depression. Admin. R. 83, 97. She satisfied the insured status requirements of the Social Security Act through March 31, 2004. *Id.* at 17, 81, 90. She must establish she was disabled on or before that date to prevail on her Title II claim. 42 U.S.C. § 423(a)(1)(A). *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). There is no insured status prerequisite for her Title XVI claim. 42 U.S.C. § 1382(a).

The administrative law judge ("ALJ") applied the five-step sequential disability determination process described in 20 C.F.R. §§ 404.1520 and 416.920. *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987). The ALJ found Phillips's ability to work affected by the combined effects of obesity, restrictive airway disease, and sleep apnea. Admin. R. 18. The ALJ found that, despite these impairments, Phillips retained the residual functional capacity ("RFC") to perform light work provided she could alternate sitting and standing at will and did not have to sit or stand for more than a total of four hours each during the workday. The ALJ imposed limits on postural activities such as stooping, crouching, and climbing, and on the work environment by excluding jobs in which a worker could not avoid loud noise or exposure to fumes, odors, dust, gas, poor ventilation, or hazards. The ALJ found Phillips could perform simple and detailed tasks and interact appropriately with the public, co-workers, and supervisors. *Id.* at 22. The ALJ elicited testimony from a vocational expert ("VE"), who said jobs exist in the national economy which a person having Phillips's RFC and vocational factors could perform. *Id.* at 27. The ALJ concluded that Phillips had failed to prove she was disabled within the meaning of the Social Security Act. *Id.* at 28.

///

///

## STANDARD OF REVIEW

The court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## DISCUSSION

### I. Claims of Error

Phillips contends the ALJ erred at step two of the decision-making process by failing to designate some of her impairments "severe" within the meaning of the regulations. She challenges the ALJ's RFC assessment on the grounds that the ALJ discounted lay witness statements without articulating legally adequate reasons and failed to comply with Social Security Ruling ("SSR") 96-8p. Phillips contends the ALJ elicited testimony from the VE with hypothetical assumptions that did not accurately reflect all of her functional limitations.

### II. The Step Two Severity Requirement

Phillips contends the ALJ erred at step two by failing to designate her hearing loss, metabolic syndrome, and depressive symptoms "severe" within the meaning of the regulations. At step two, a claimant must meet what is known as the severity requirement. The claimant must show that she has any combination of impairments which causes more than minimal limitation in her ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant fails to make this *de minimis* showing, she is not disabled within the meaning of the Social Security Act and the disability determination process ends without proceeding to the remaining steps. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Here, the ALJ resolved step two in Phillips's favor, finding her ability to work significantly affected by a combination of impairments, including obesity, restrictive airway disease exacerbated by tobacco abuse, and sleep apnea. Admin. R. 18-19. The ALJ recognized that Phillips had significant functional limitations which were identified in the RFC assessment described previously. After resolving step two in Phillips's favor, the ALJ properly continued the decision-making process until reaching a determination at step five. Any error in failing to designate additional impairments as separate and distinct severe impairments at step two did not prejudice Phillips. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(Any error in omitting an impairment from the severe impairments identified at step two was harmless where step two was resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)(failure to list an impairment as severe at step two was harmless error where the ALJ considered the functional limitations posed by that impairment later in the decision). Accordingly, the court finds no error in step two of the ALJ's decision.

### III. RFC Assessment

Phillips contends the ALJ failed to assess her RFC accurately because she did not comply with the requirements of SSR 96-8p and discounted lay witness statements without articulating a sufficient explanation.

#### A. SSR 96-8p

After a claimant has surmounted step two by meeting the severity requirement, an ALJ must consider, in assessing the claimant's RFC and throughout the remaining steps of the decision, all evidence of functional limitations imposed by all the claimant's medically determinable impairments, including any that were not identified as severe at step two. 20 C.F.R. §§ 404.1523, 416.923. Accordingly, the court reviews to determine whether the ALJ considered all the evidence

4 - REPORT AND RECOMMENDATION

of functional limitations from hearing loss, metabolic syndrome, and depression in the remaining steps of her decision.

Phillips had her hearing evaluated by an audiology clinic in December 2004, nine months after her insured status expired. She said she had experienced hearing loss since childhood. Admin. R. 205. Notably, hearing difficulties had not prevented her from working in the past. Testing confirmed hearing loss ranging from mild to fairly severe in the upper ranges, with hearing in the right ear better than the left. The audiologist predicted that without hearing aids, Phillips would be likely to encounter difficulty listening in nearly any setting, particularly when background noise is present. *Id.* at 203. Notably, the audiologist did not suggest that Phillips would have this difficulty while using hearing aids. Phillips was fitted with hearing aids in February 2005. *Id.* at 206.

The ALJ properly considered the evidence of functional limitations from hearing loss. The ALJ acknowledged the audiology evaluation from December 2004, but found Phillips's statements about her hearing, ability to participate during the administrative hearing, and the record as a whole indicated that her hearing loss did not result in severe limitation of work-related functions. *Id.* at 19.

This conclusion is supported by substantial evidence. For example, in September 2003, Phillips's primary care physician noted that he occasionally had to repeat words or phrases due to her hearing loss. This did not appear to impede communication significantly, however. *Id.* at 273. In July 2005, Phillips underwent a psychological evaluation by Lawrence Lyon, Ph.D. Dr. Lyon noted that Phillips occasionally had to have questions repeated. *Id.* at 302. In August 2005, Norman Staley, M.D., interviewed Phillips by telephone. Phillips was not wearing her hearing aids during the interview and communicated without difficulty. She told Dr. Staley her hearing was fine except in the presence of background noise. She said her hearing aids worked well and she used them when

she left the house. *Id.* at 312. Phillips underwent another psychological evaluation in December 2007, during which she needed to have some questions repeated. *Id.* at 358. Phillips underwent a third psychological evaluation in March 2008, by James Wahl, Ph.D. Dr. Wahl noted that Phillips was not wearing hearing aids and that her hearing difficulty was at most a mild problem. Phillips was able to understand and respond to normal conversational tones. *Id.* at 369. Based on this evidence, the ALJ could reasonably conclude that Phillips has, at worst, a mild hearing problem that requires occasional repetition in some environments, but does not interfere a great deal with communication in controlled surroundings without excessive background noise.

At the administrative hearing in April 2008, Phillips appeared without hearing aids and participated fully in the proceedings. *Id.* at 475-503. She was able to respond to questions and only indicated difficulty hearing two questions during the proceedings. *Id.* at 493, 494. She asked the ALJ to repeat herself occasionally, but not excessively in comparison to typical transcripts the court has reviewed from such administrative hearings. The ALJ was in a much better position than the court to evaluate whether these requests reflected an inability to hear or whether Phillips simply did not understand particular questions from time to time, as is typical of claimants in such hearings. The ALJ did not believe Phillips had any great difficulty hearing the proceedings, and there is no basis for the court to overturn that conclusion. After observing Phillips's testimony, the medical expert did not include severe hearing limitations in his opinion. His only comment on the subject of hearing limitations was that Phillips had not addressed them properly because she chose not to wear hearing aids due to discomfort. *Id.* at 508. With regard to the level of discomfort this involved, Phillips testified it amounted to bothersome irritation but not significant pain. *Id.* at 498. The ALJ could reasonably conclude that Phillips's noncompliance with recommended treatment suggested

her hearing limitations were not as severe as she claimed. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (9th Cir. 2001).

Phillips relies on the testimony of the medical expert from the October 2007 hearing in which Phillips did not appear. The medical expert, based on the audiology report from December 2004, testified that it appeared Phillips had "fairly profound deafness in the upper ranges .. so that she would not be able to work in any field where she would have to be able to hear speech patterns." *Id.* at 456. The medical expert concluded at the time that he had insufficient objective evidence to allow him to form an expert opinion about Phillips's medical condition. *Id.* at 457. As noted previously, after observing Phillips's participation at the second hearing and reviewing the full record, the medical expert did not reaffirm the quoted opinion regarding Phillips's hearing limitations.

The ALJ considered all the evidence of functional limitations resulting from Phillips's hearing loss and reached conclusions that logically flow from the record as a whole. The ALJ adequately accommodated Phillips's hearing limitations by restricting her vocational base to work environments without excessive background noise.

The ALJ considered all the evidence of functional limitations from Phillips's diagnosis of metabolic syndrome, a group of risk factors, such as obesity, hyperlipidemia, and hypertension that are associated with an increased likelihood of developing coronary disease, stroke, and type 2 diabetes. In October 2004, several months after Phillips's insured status expired, Jenny Harris, P.A., noted Phillips's history of morbid obesity and high cholesterol and ordered blood tests for diabetes risk factors and polycystic ovary syndrome. *Id.* at 250. As a result of the testing, Harris prescribed metformin, a medication used to treat hyperglycemia associated with both type 2 diabetes and

7 - REPORT AND RECOMMENDATION

polycystic ovary syndrome. *Id.* at 248. Phillips also had prescriptions for medication to treat hyperlipidemia and hypertension. The ALJ acknowledged these conditions, but found the record did not include evidence that these risk factors result in specific functional limitations that would have an impact on specific work related activities. *Id.* at 19.

This conclusion is supported by substantial evidence. Phillips correctly states that the medical expert addressed the nature of a metabolic syndrome during the October 2007 hearing which Phillips did not attend. The ME testified that a metabolic syndrome is a prediabetic condition that is fairly common among people who are overweight and do not exercise. *Id.* at 466-67. He said that metabolic syndrome interferes with quality of life, and spoke in general terms about how these risk factors might affect a patient. *Id.* at 467. The ME did not address how these risk factors affected Phillips specifically. He did not identify specific functional limitations Phillips has a result of metabolic syndrome or indicate work-related activities she cannot do as a result of it. Phillips has not identified any evidence that the ALJ failed to consider which shows she has actual functional limitations from metabolic syndrome. She has therefore failed to show the ALJ erred and failed to satisfy her burden of proving functional impairment from this condition. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)(Burden of proof is on the claimant at step two).

The ALJ considered all the evidence of functional limitations from depression. In September 2003, Phillips reported current depressive symptoms and a history of antidepressant therapy in the distant past. Dr. Starrett believed her symptoms were a situational exacerbation of a chronic predisposition for depression and started her on Paxil. Admin. R. 273. In follow up visits with physician assistant Harris, Phillips reported improving symptoms with increased medication. Harris recommended counseling. *Id.* at 267, 270. In November 2003, Harris discontinued Paxil and started

8 - REPORT AND RECOMMENDATION

Lexapro after which Phillips reported additional improvement. *Id.* at 265. In January 2005, Phillips again reported depression, and Harris initiated therapy with Prozac. *Id.* at 246. In May 2005, Phillips was less depressed. *Id.* at 240.

In July 2005, Dr. Lyon administered psychological testing. This evaluation focused on memory, but Dr. Lyon performed a complete mental status evaluation and clinical interview. He did not include a diagnosis of depression or identify any functional impairments associated with depression. *Id.* at 302-04.

In December 2007, Gail Wahl, Ph.D., performed a comprehensive psychodiagnostic evaluation. *Id.* at 356. Phillips reported that she had anxiety and tended to become angry easily. Antidepressant medication had been effective in the past, but she had discontinued them due to their cost. Dr. Wahl performed a mental status evaluation and observed that Phillips did not appear depressed. Phillips had not attempted counseling, as recommended by her primary care provider. Dr. Wahl diagnosed an adjustment disorder with mixed anxiety and depressed mood secondary to her asthmatic condition. *Id.* at 356-58. Dr. Wahl did not identify functional limitations resulting specifically from the adjustment disorder. She opined that Phillips had no limitation in understanding, remembering, or carrying out simple instructions, and only mild limitation in making judgments on simple work-related decisions. She believed Phillips had moderate limitation when complex instructions and complex work-related decisions were involved and moderate limitation interacting appropriately with others and responding to work situations and changes in a routine work setting. *Id.* at 361, 363.

In March 2008, James Wahl, Ph.D., conducted a neuropsychological evaluation. Phillips told Dr. Wahl that she had depressive symptoms but did not see them as an impediment to employability.

9 - REPORT AND RECOMMENDATION

*Id.* at 368. Dr. Wahl administered a battery of tests, including validity testing which showed no indication of malingering, but did suggest a tendency to exaggerate psychological distress as a display of insecurity and lack of confidence. *Id.* at 371. Dr. Wahl diagnosed an adjustment disorder with depressed mood characterized by low energy and probably related to her sleep apnea. He opined that Phillips might have social avoidance in jobs requiring frequent contact with the general public or close contact to numerous coworkers, but that she could handle both in limited amounts. Phillips herself did not believe her depressive symptoms limited her ability to work. *Id.* at 372. Dr. Wahl opined Phillips had no limitations in understanding, remembering, or carrying out simple instructions or making simple work-related decisions. She had mild limitations when complex instructions and decisions were involved. She had mild social avoidance due to depression but could interact appropriately with supervisors, coworkers and the general public. *Id.* at 365-67.

At the hearing in April 2008, the ME testified that the record supported no severe mental impairments from depression. He found the record supported an adjustment disorder with depressed mood, but pointed out that Phillips had done well when compliant with antidepressant medication therapy. *Id.* at 505, 507. Impairments that are effectively controlled by medication are not disabling within the meaning of the Social Security Act. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ considered all of the foregoing evidence. She also noted that Phillips had not participated in counseling as recommended, and had not been fully compliant with prescribed antidepressant medication therapy. The ALJ observed that Phillips's providers had not consistently diagnosed depression, and sometimes had based the diagnosis primarily on Phillips's subjective history without any depressive symptoms being observed. For example, Dr. Gail Wahl observed no

10 - REPORT AND RECOMMENDATION

depressive symptoms although Phillips was not taking antidepressant medications at the time of her evaluation. Dr. James Wahl opined that Phillips's depressive symptoms would improve if Phillips would comply with medication therapy and counseling. *Id.* at 19-20. The court finds no error in the ALJ's evaluation of the functional limitations resulting from Phillips's adjustment disorder.

### B.    Lay Witness Statements

Phillips contends the ALJ improperly discounted the written statements submitted by Elizabeth Smith, Vickie Phillips, Mindee Graham, and Richard Phillips. An ALJ must consider the statements of non-medical sources who are in a position to observe a claimant's symptoms and daily activities. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Such lay witnesses are competent to testify regarding the claimant's condition. *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). Lay testimony as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded without comment. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. *Id.; Bayliss v. Barnhart,* 427 F.2d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).

In March 2008, Vickie Phillips and Elizabeth Smith submitted written questionnaires prepared by Phillips's attorney to describe her mental and emotional functioning. In describing Phillips's activities of daily living, Vickie Phillips did not identify any limitations or activities she could not do, but indicated Phillips was able to clean, shop, cook, and groom herself neatly. Admin. R. 175. In describing Phillips's social functioning, Vickie Phillips said Phillips appears to be nervous in large gatherings and avoids altercations or arguments. *Id.* In describing Phillips's ability to concentrate, persist, or maintain pace, Vickie Phillips said she forgets what she was going to say

11 - REPORT AND RECOMMENDATION

during long conversations. *Id.* at 176. Vickie Phillips indicated there was insufficient evidence to establish episodes of decompensation. *Id.* at 178. She reported that Phillips has bouts of depression during which she watches television or stays in her room without speaking to others. *Id.* at 177. When she becomes angry at someone, she will not discuss the problem. *Id.* at 180. Vickie Phillips said that, based on her observations, she believed Phillips could live alone and function in a normal and appropriate fashion. *Id.* at 181.

Elizabeth Smith did not describe Phillips's daily activities or record observations of her symptoms. Instead, she marked boxes on the questionnaire to indicate no problems in social functioning, marked limitation in concentration, persistence, or pace, and moderate episodes of decompensation. *Id.* at 183-85.

The ALJ gave these statements little weight and articulated germane reasons for doing so. *Id.* at 21. The ALJ pointed out that the two statements were inconsistent with each other. For example, Vickie Phillips indicated Phillips had moderate limitations in social functioning while Smith indicates she had no such problems. Vickie Phillips reported no indication of episodes of decompensation, whereas Smith indicated repeated such episodes. The ALJ also indicated the lay witnesses did not appear to be familiar with the specialized meaning of terms on the questionnaire, as they are used in the context of social security disability determinations. *Id.* at 21. For example, Vickie Phillips gave entirely benign descriptions of Phillips's activities of daily living and social functioning, but rated her impairment in these areas as "moderate." *Id.* at 174, 175. Smith indicated Phillips had "significant and persistent disorganization of motor function in two extremities," but the evidence she cited was that Phillips becomes short of breath after walking a short distance, a symptom which has nothing to do with motor function in the extremities. *Id.* at 188. The ALJ also

12 - REPORT AND RECOMMENDATION

found the two statements inconsistent with the ME's testimony and the record as a whole. *Id.* at 21. The ME testified that the medical and psychological evidence did not support any severe mental impairment. *Id.* at 505. Dr. James Wahl similarly found only a mild degree of impairment. *Id.* at 365-67. The ALJ also concluded their statements were based primarily on Phillips's subjective statements instead of their own observation of the activities described. *Id.* at 21. This conclusion flows logically from statements that appear to be from a first person point of view, such as Smith's statement that Phillips must change positions while sleeping, for example. The court finds no error in the ALJ's evaluation of these lay witness statements.

Mindee Graham provided an agency standard form third party written statement in February 2005. Graham said that Phillips gets up in the morning and plays on the computer for a while before going back to bed. She then gets up in the afternoon and lays on the couch watching television. She said Phillips does not help with the cooking, housework, pet care; she does not even brush her own hair. She believed Phillips could not breath well enough "to leave her machine" because she needs oxygen day and night. *Id.* at 127, 132. Graham said Phillips could not breath well enough to do lifting, stair climbing, bending, standing, kneeling, walking, squatting, reaching, or completing tasks. She can walk only 15 feet before she needs to rest for five or six minutes. She can pay attention well, finish what she starts, follow written instructions, follow spoken instructions, and get along with authority figures. *Id.* at 131.

The ALJ considered Graham's statement, but gave it little weight to the extent it suggested Phillips could not do work within the limitations of her RFC assessment. *Id.* at 25. The limitations Graham described greatly exceeded even the limitations Phillips herself alleged. The ALJ found Graham's statement inconsistent with Phillip's contemporaneous written reports. Graham claimed

Phillips did not do anything except lay in front of the television or sit in front of a computer. She said Phillips could not be on the back porch away from her breathing machine for more than a few minutes. Phillips reported she sometimes made dinner, helped care for the dog, performs her own self care, does laundry, helps with household chores, shops and gardens. *Id.* at 18-25. The ALJ properly found these statements inconsistent. The ALJ's conclusion that Graham's statement should receive little weight was not erroneous.

In December 2007, Phillips's husband, Richard Phillips submitted a letter to explain why Phillips had failed to appear at the administrative hearing scheduled for November of that year. He indicated he had called the ALJ and Phillips's attorney to report that Phillips was ill and to request a new hearing date and location. He reported Phillips was suffering from nausea, vomiting, migraines, and asthma symptoms. She had not been able to afford all of her medications for three months. *Id.* at 173.

The ALJ considered Mr. Phillips's letter, but found it unpersuasive. The ALJ noted that the letter alleged migraines, which Phillips herself did not claim as a disabling condition. She noted that Phillips testified she could obtain medications from a low cost prescription program at Wal-Mart. The ALJ noted that the letter was inconsistent with the medical evidence and the testimony of the ME to the extent it suggested limitations exceeding those in her RFC assessment. The ALJ's conclusion that Mr. Phillips letter was unpersuasive as evidence of limitations beyond the RFC assessment was not erroneous.

The ALJ's decision makes clear that she did not arbitrarily discount the lay witness statements without comment. She considered the lay witness statements and found them unpersuasive for germane reasons flowing logically from substantial evidence in the record as a

14 - REPORT AND RECOMMENDATION

whole. *Nguyen,* 100 F.3d at 1467; *Bayliss,* 427 F.2d at 1218; *Lewis,* 236 F.3d at 511. In conclusion, the ALJ's evaluation of the lay witness statements should be upheld.

## IV.    Vocational Evidence

At step five of the decision-making process, the Commissioner must show that jobs exist in the national economy that a person having the vocational factors and functional limitations of the claimant can perform. *Yuckert,* 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). The ALJ can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. *Andrews,* 53 F3d at 1043.

Here, the ALJ elicited testimony from the VE based on hypothetical questions reflecting the limitations in her assessment of Phillips's RFC. Admin. R. 515-16. The VE testified that a hypothetical person with Phillips's age, education, work experience, and RFC could perform the activities required in the sedentary, unskilled occupation of order clerk for the food and beverage industry, which represents 250,000 jobs in the national economy. *Id.* at 516. The VE testified regarding potential clerical occupations, which Phillips challenges because they may require transferable skills. The court does not need to reach that challenge because the order clerk occupation represents jobs in significant numbers in the national economy.

Phillips contends the ALJ improperly elicited the VE's testimony with hypothetical assumptions that did not accurately reflect all of her functional limitations. The ALJ used hypothetical assumptions that reflected her evaluation of the evidence and the RFC assessment she reached. The ALJ was not required to incorporate limitations she found unsupported by the evidence or supported only by evidence she properly discounted. *Batson,* 359 F3d at 1197-98; *Osenbrock v. Apfel,* 240 F3d 1157, 1164-65 (9th Cir 2001).

## RECOMMENDATION

The ALJ's conclusion that Phillips failed to prove she was disabled within the meaning of the Social Security Act is based on proper legal standards and supported by substantial evidence in the record as a whole. Accordingly, the Commissioner's decision that Phillips is not entitled to disability insurance benefits or supplemental security income under Titles II and XVI of the Social Security Act should be affirmed.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. *Objections to this Report and Recommendation, if any, are due by July 5, 2011. If objections are filed, any response to the objections are due by July 22, 2011,* see *Federal Rules of Civil Procedure 72 and 6.*

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 14 day of June, 2011.

Mark D. Clarke
United States Magistrate Judge